## 3013.    BROWN *v.* THE STATE.

1. An accusation which charges that the accused did, on a named date, in the county of the prosecution, "sell and barter for a valuable consideration, both directly and indirectly, alcoholic, spirituous, malt, and intoxicating liquors, intoxicating bitters, and other drinks which if drunk to excess will produce intoxication," is not subject either to general demurrer or to special demurrer, on the ground that it does not set out with sufficient definiteness the offense charged.

2. If the sentence of the court is within the limits prescribed by law for the offense charged, this court has no jurisdiction to review the sentence or the court's refusal to reduce it.

3. The ground of the motion for new trial relating to alleged newly discovered evidence is not such as to require a reversal.

DECIDED JANUARY 31, 1911.

Accusation of sale of liquor; from city court of Douglas—Judge Lankford. October 28, 1910.

*Rogers & Heath,* for plaintiff in error.
*Lawson Kelley, solicitor, Quincey & McDonald,* contra.

POWELL, J. 1. The first headnote states enough of the accusation to disclose the point made and decided therein. The accusation is in the usual form employed in such cases, and its sufficiency has been so often recognized that the law ought to be regarded as settled as to this point. Personally speaking, the writer may confess that he believes that the law which allows such looseness and indefiniteness in criminal pleading is very bad law, and that the arguments advanced by counsel for the plaintiff in error as to why it should not be enforced in the present case are some, but not all, of the reasons why there ought to be a modification of the existing rule; but legislatures, and not courts, have the duty of modifying the law. Such gross lack of technicality in criminal pleading does not tend to promote public justice. In England, where criminal laws are said to be administered with greatest efficiency, the efficiency has not been obtained through the allowing of any such lax procedure as the law in this State admits of. We can not hope to increase the number of convictions of guilty men by subjecting those who are merely accused to the hazard of a trial without any fair degree of information as to the specific charge with which they are to be confronted at the trial. A number of the citizens of the community in which this prosecution was had have filed affidavits which appear in the record and which indicate that there may have been a miscarriage of justice in the present case, and the nature of the showing made in connection with the ground alleging newly discovered evidence tends to corroborate the contention that if the allegations of the indictment had been made more specific, the accused would have been able more successfully to meet the State's testimony tending to show his guilt. Many such cases, however, have been before this court. Recognizing as we do that it is the duty of the courts to enforce the law as it is, and not as it should be, we have in all those cases unquestioningly followed the law, and have affirmed judgments despite any injustice that may have apparently been done the accused from an abstract standpoint. If this rule which we are now criticizing is really a bad one, it is not improbable that sooner or later enough of these instances will occur to attract the attention of the public and of the lawmaking body of the State and to compel such modification as will protect both the State and the accused in their respective rights in criminal trials. And this is the proper method through which adjustments in matters of juris-

prudence should come. The courts should enforce the law as it is; and if the law is good, it will stand; and if it is bad, its repeal or modification will come as a matter of natural consequence. The body of our law would be little more than a compendium of idle precepts if the courts should undertake to enforce the law when it seemed right to the judges, and to disregard or override it when it did not seem right. And if the public, and especially those members of the public who are called to jury service, would only observe this great duty of obeying the law as it is as scrupulously as judges generally do, we would not only have, as an ultimate result, better, laws, but better enforcement of the law; and, furthermore, would have what is above all desirable, a widespread respect for the law.

2. The court sentenced the prisoner to serve a term in the chain-gang, and also to pay a fine. The sentence was clearly within the limits of the statute prescribing punishment for misdemeanors. The prisoner filed a motion (supporting it with proof as to his good character and as to other matters appealing to judicial clemency), asking the judge to modify the sentence so as to leave off the chain-gang punishment. The court overruled the motion. This was clearly within his discretion, and we have no power or inclination to interfere.

3. The newly discovered evidence related principally to proof of the defendant's good character and to the impeachment of the State's witnesses by testimony as to their bad character. There was also an affidavit tending to show an alibi for the accused. It is noteworthy that the accused himself files no affidavit that this testimony is newly discovered. He would hardly be willing to admit that his good character was a fact that had been discovered only since the trial. According to the well-recognized rule, newly discovered evidence tending to impeach the State's witnesses is not cause for a new trial. As to the testimony tending to show an alibi, though counsel for the accused may not have known of the witness, the facts he relates make it plain that the accused himself knew of this witness. It is true that under the general language used in the indictment, it is very probable that he did not know what the State's witness would swear to, and that on this account he did not have this alleged newly discovered witness subpœnaed; but this is merely one of those evils that grow out of the indulgence of the lack of technicality, inveighed against in the first division of this

opinion—one of those evils every citizen charged with crime must suffer as a result of the law's own plan for the trial of criminal cases.

Before closing this opinion we deem it proper to state that we are not to be understood as reflecting either upon the jury that tried this case or upon the judge who presided over the trial and who exercised his discretion in refusing a new trial and in imposing the sentence. What we have said above was said, not so much with the present case in view, as with a class of cases, of which this is merely one, in view. Knowing the trial judge as we do, we strongly suspect that he has made no mistake in imposing the sentence complained of. He knows Pat Brown and the witnesses much better that we do (for we know none of them, except as names in a cold record), and he saw them as living personages. He is an honest man and a good judge; and we do not believe that he would have put harsh punishment on one as to whose guilt there was grave doubt. *Judgment affirmed.*